

**IT IS ORDERED as set forth below:**

**Date: November 17, 2020**

_Wendy L. Hagenau_

_____
**Wendy L. Hagenau**
**U.S. Bankruptcy Court Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 15-58442-WLH |
| SUGARLOAF CENTRE, LLC, | |
| | CHAPTER 11 |
| Debtor. | |

### ORDER ON FINAL APPLICATION FOR COMPENSATION FILED BY
### GLASS RATNER ADVISORY & CAPITAL GROUP, LLC

**THIS MATTER** is before the Court on the Sixth and Final Application for Compensation
and Supplement to Final Fee Application filed by Glass Ratner Advisory & Capital Group, LLC,
("GlassRatner") as clarified (Case No. 15-58442 Docs. Nos. 162, 188, and 199) (the
"Applications"), pursuant to which it seeks final approval of $107,905.10 in fees and $680.72 in
expenses previously approved by the Court on an interim basis, together with an additional

1

$11,641.20 in fees and $6.70 in expenses sought in the Sixth and Final Application, Supplement, and Clarification for total compensation of fees and expenses of $120,233.72.

## I.   FACTS

The Debtor, together with its affiliates, Bay Circle Properties, LLC ("Bay Circle"), DCT Systems Group, LLC ("DCT"), Nilhan Developers, LLC ("Nilhan Developers"), and NRCT, LLC ("NRCT") (collectively the "Debtors"), each filed a petition for relief under Chapter 11 of the Bankruptcy Code on May 4, 2015.  On June 8, 2015, the Court administratively consolidated the Debtors' cases.  The manager of each of the Debtors is Chuck Thakkar.  Ownership in each debtor differs somewhat but, in general in each debtor, ownership is held by some combination of Mr. Thakkar, his children Rohan and Niloy, his wife, and/or a company which some combination of the Thakkar family owns.

The immediate reason for filing bankruptcy was a default by the Debtors on a series of loan agreements with Wells Fargo Bank, N.A.[1]  Eleven days into the case, Wells Fargo filed a Motion for the Appointment of a Chapter 11 Trustee (Case No. 15-58440 Doc. No. 12).  After an evidentiary hearing, the Court denied the request and appointed an examiner instead (Case No. 15-58440 Doc. No. 134).  The examiner served until November 30, 2016 and prepared several reports regarding the Debtors, their cash management systems, and intercompany debts (Case No. 15-58440 Docs. Nos. 157, 274, 304, and 414).

The obligations to Wells Fargo were secured by certain real property owned by the Debtors. The first several months of these cases were devoted to the Debtors liquidating or refinancing various pieces of property to meet milestone payment deadlines agreed to by Wells Fargo.  As one of the milestone payments was approaching, Bay Circle sought to sell its property.  Good Gateway,

---

[1] Wells Fargo Bank, N.A. began its association with the Debtors in 2008.  The history is set out in several prior orders issued by the Court, including the Order Denying Substantive Consolidation (Case No. 15-58440 Doc. No. 797).

LLC and SEG Gateway, LLC (collectively "Gateway") held a judgment lien on Mr. Thakkar's one-half interest in the Bay Circle property when Mr. Thakkar conveyed the property to Bay Circle. Gateway objected that its interest in the Bay Circle property was unnecessarily lost and asked for adequate protection of the lien it lost by virtue of the sale of the Bay Circle property. The Court approved the sale and provided Gateway a replacement lien on Bay Circle's claims for contribution and subrogation (Case No. 15-58440 Doc. No. 797). The Court later modified the adequate protection order to clarify the order was intended to provide Gateway with adequate protection of its judgment lien to the extent the sale of Bay Circle's property impaired the value of Gateway's lien, without prejudice to any defenses that might be raised to subrogation and contribution, and that the lien was only on the net proceeds of Bay Circle's claims against the other Debtors (Case No. 15-58440 Doc. No. 1125).[2]

Behind the scenes, these bankruptcy cases have been impacted and driven to a certain extent by litigation between Mr. Thakkar and his family, on the one hand, and Gateway, on the other. Gateway obtained judgments in the amounts of $2.5 million and $12 million against Mr. Thakkar, NCT Systems, Inc, and other non-debtor entities in a Florida state court. Due to subsequent litigation, Gateway claims multiple interests in the Debtors' cases, including an equity interest in NCT, which holds an indirect equity interest in Sugarloaf; an interest in NRCT (by way of a judgment it holds against Rohan Thakkar, who is a 50% owner of NRCT, which itself has an indirect ownership interest in Sugarloaf); 50% of any recovery by Nilhan Financial, LLC, a creditor of the Debtors; and the adequate protection claim in the Bay Circle case.

---

[2] The Court approved Gateway's standing to pursue contribution and/or subrogation claims of Bay Circle (Case No. 15-58440 Doc. No. 1137), and Gateway filed an adversary complaint on behalf of the Trustee against NRCT with respect to Bay Circle's contribution claim on August 13, 2019, initiating Adversary Proceeding No. 19-05284. The adversary proceeding remains pending.

Gateway filed claims in the cases, all of which were disallowed except the claim in Bay Circle. Gateway also filed a Motion for Relief from Stay (Case No. 15-58440 Doc. No. 307) early in the cases seeking to continue litigation in the Florida courts, which the Court denied (Case No. 15-58440 Doc. No. 380). The parties remain determined to litigate though, as evidenced by the numerous cases filed in this Court, in Florida, and elsewhere. In fact, Mr. Thakkar has testified that he will continue to litigate with Gateway forever (see Transcript of Hearing on December 4, 2020, Case No. 15-58440 Doc. No. 936 at 147 line 12 (Mr. Thakkar stated he intended to appeal "till I die.")). In these bankruptcy cases, there have been six adversary proceedings and at least as many appeals, although not all are directly related to Gateway.

On December 11, 2018, after notice and a hearing, the Court appointed a Chapter 11 Trustee in all five cases (Case No. 15-58440 Doc. No. 919). The appointment was triggered by Mr. Thakkar's actions in the Nilhan Developers case where, without notifying the Court or his counsel and without Court approval, Mr. Thakkar exercised an option to re-acquire property for over $9 million and incurred unauthorized secured post-petition financing in that amount from an insider (for over $5 million) and a third party. The Court appointed Ronald L. Glass as Chapter 11 Trustee for all the Debtors (Case No. 15-58440 Doc. No. 922). Mr. Thakkar sought reconsideration of the order appointing a trustee (Case No. 15-58440 Doc. No. 947), which the Court considered at a hearing on February 7, 2019 and denied (Case No. 15-58440 Doc. No. 1248).

The Trustee sought to retain GlassRatner as his financial advisor (Case No. 15-58440 Doc. No. 934). The Court held a hearing on January 17, 2019. No objections were filed and there was no opposition. Accordingly, the Court approved the retention of GlassRatner as financial advisor *nunc pro tunc* to December 11, 2018 (Case No. 15-58440 Doc. No. 965).

4

At the initial status conference with the Trustee on December 18, 2018, the Court requested the Trustee address several issues including: assessing the potential contribution claim of Bay Circle, resolving pending litigation, and bringing these cases to a final disposition. The Trustee reviewed the assets and liabilities of each debtor and filed a Status Report on February 26, 2019 with his initial findings and questions (Case No. 15-58440 Doc. No. 983). After a failed attempt at mediating a global settlement of all issues, including those involving Gateway, the Trustee moved forward in each case to bring matters to a posture to be decided by the Court. At that point, the cases were all taking different paths to resolution and the cases were severed on May 5, 2020 (Case No. 15-58440 Doc. No. 1420).

A.    Facts Regarding Sugarloaf

Sugarloaf is 100% owned by Sugarloaf Centre Partners, LLC, which is in turn owned 50% by NRCT (one of the Debtors) and 50% by NCT Systems, Inc. Gateway claims it owns 100% of NCT Systems, Inc., but this allegation is disputed by Mr. Thakkar. When the petition was filed, Sugarloaf owned vacant land at 1930 Satellite Blvd., Duluth, Georgia; a retail shopping center located at 1950 Satellite Blvd., Duluth, Georgia; and a single-story building at 1970 Satellite Blvd., Duluth, Georgia.

To pay down the Wells Fargo debt according to the deadlines set in the bankruptcy case, the Court authorized Sugarloaf to borrow $7,500,000 from Simba Global PTY LTD ("Simba"), a registered Australian proprietary limited company (Case No. 15-58440 Doc. No. 454) (the "Financing Order"). A note in that amount was executed on October 28, 2016 with a maturity date of October 30, 2019 (the "Simba Note"). Sugarloaf granted Simba a first priority lien on all of Sugarloaf's real property at 1930, 1950, and 1970 Satellite Blvd. Later, on June 13, 2017, Simba moved the Court to modify the Financing Order (Case No. 15-58440 Doc. No. 699), which motion

the Court granted on August 1, 2017 (Case No. 15-58440 Doc. No. 728).  No other entries were made on the docket regarding the Simba Note, and the Simba Note was not discussed at any hearings, until the Trustee was appointed.  The Trustee's February 2019 report disclosed that Simba transferred its security deed to Red Chillies Holdings Financial, LLC ("Red Chillies"), which the Trustee later learned was a Delaware corporation controlled by Mr. Thakkar.  The assignment modified the security deed by changing the legal description to include only the property located at 1950 and 1970 Satellite Blvd. (and not the 1930 Satellite Blvd. property).

A couple of weeks after the Red Chillies assignment, Red Chillies executed an assignment in favor of Westmoore Lending Partners IV LLC ("Westmoore"), which was executed by Mr. Thakkar as manager of Red Chillies.  On February 13, 2019, the Trustee requested and received a payoff from Westmoore stating Westmoore would be satisfied by payment of $3 million plus interest (Case No. 15-58440 Doc. No. 983 Ex. C).  The Trustee then ordered a title report and, upon confirming that the property at 1930 Satellite Blvd. was unencumbered, began the process of selling the property.

The Court approved the sale of 1930 Satellite Blvd. for $1.5 million to Discovery Funding LLC on May 2, 2019 (Case No. 15-58440 Doc. No. 1033).  As a result of the sale, the Trustee received proceeds in the amount of $1,437,961.68, after paying costs and commissions (Case No. 15-58440 Doc. No. 1185).  The Trustee did not sell the property at 1950 and 1970 Satellite Blvd. Notwithstanding Westmoore's prior representation to the Trustee, on April 14, 2020, Westmoore filed a proof of claim for $9,147,349.54 secured by Sugarloaf's property at 1950 and 1970 Satellite Blvd. (Case No. 15-54880 Claim No. 11-1) (the "Westmoore Proof of Claim").  Mr. Thakkar ultimately did not oppose that amount of the claim.  While there is speculation as to why the claim tripled, the Court makes no finding in that respect.

B.    Plan and Dismissal

At various points throughout the case, Mr. Thakkar has sought to dismiss this and the other Debtors' cases.  Mr. Thakkar, acting *pro se* as managing member of the Debtors, filed a Motion to Dismiss (Case No. 15-58440 Doc. No. 1060) on May 20, 2019.  With the assistance of counsel, he filed an Amended Motion to Dismiss on July 9, 2019 (Case No. 15-58440 Doc. No. 1134), which adopted and amended his previous motion to dismiss.  The Trustee filed a response in opposition later that month (Case No. 15-58440 Doc. No. 1160), arguing the proposal to dismiss the cases upon paying some but not all claims constituted an impermissible structured dismissal.  The Trustee filed a supplemental response in opposition to dismissal on January 9, 2020 (Case No. 15-58440 Doc. No. 1280).

Before the Court heard the requests for dismissal, the Trustee filed a Motion for Order Directing Mediation (Case No. 15-58440 Doc. No. 1193, amended at Doc. No. 1194).  No one objected, and the Court authorized and directed mediation and appointed retired Bankruptcy Judge Mary Grace Diehl as mediator (Case No. 15-58440 Doc. No. 1201).  The Trustee and his counsel, among others, attended the mediation on October 24 and 25, 2019, which then continued telephonically for several days thereafter.

After the mediation concluded with no agreement, the Court held a status hearing on November 14, 2019, after which it scheduled a hearing on Mr. Thakkar's Motion to Dismiss and his Amended Motion to Dismiss as to Sugarloaf for January 16, 2020.  At that hearing, the Court denied the motion to dismiss without prejudice.  The Court directed any eligible party desiring to file a plan to do so by February 18, 2020.  The Court further ordered that if no plan of reorganization was filed as to Sugarloaf by February 18, 2020, it would hold a hearing on February

19, 2020, for the Debtor, the Trustee and parties in interest to show cause why the case should not be converted to Chapter 7 (Case No. 15-58440 Doc. No. 1286).

The Trustee filed a Chapter 11 Plan of Liquidation (Case No. 15-58440 Doc. No. 1315) and Disclosure Statement (Case No. 15-58440 Doc. No. 1316) on February 18, 2020. Mr. Thakkar, together with Niloy and Rohan, also filed a Chapter 11 Plan (Case No. 15-58440 Doc. No. 1323) and Disclosure Statement (Case No. 15-58440 Doc. No. 1324). A hearing was scheduled for March 24, 2020 on the disclosure statements filed by the Trustee and by Mr. Thakkar and his sons. The day before the hearing, counsel for Mr. Thakkar and his sons filed an Amended Plan and Disclosure Statement (Case No. 15-58440 Docs. Nos. 1350 & 1351).

At the hearing on March 24, 2020, it became clear there was no consensus between the Trustee and Mr. Thakkar as to who held the Simba Note or the amount due. The Court set a bar date for anyone claiming a secured interest in the Sugarloaf property to file a proof of claim by April 14, 2020, and a deadline to object of May 14, 2020. Westmoore was the only entity to file a claim, which was in the amount of $9,147,349.54.

The Trustee ultimately objected to and settled Westmoore's claim. Once the settlement was approved, the Trustee filed a Motion to Dismiss on August 5, 2020 (Case No. 15-58442 Doc. No. 147). Mr. Thakkar filed an objection in which he did not oppose dismissal, but he objected to the payment of certain debts and requested the Court set a deadline for the Trustee's professionals to file fee applications (Case No. 15-58442 Doc. No. 159). The Court held a hearing on the Motion to Dismiss on August 27, 2020 at which the Court found dismissal was warranted. The Court granted the Motion to Dismiss, subject to the final fee applications being approved, on August 28, 2020 (Case No. 15-58442 Doc. No. 164).

C.    GlassRatner Fee Applications

GlassRatner filed its First Interim Application (Case No. 15-58440 Doc. No. 1065) on May 22, 2019 seeking allowance and reimbursement of $51,476.27 in fees and expenses of $92.92 for the period December 11, 2018 through March 31, 2019.  The Court approved the application on June 27, 2019 (Case No. 15-58440 Doc. No. 1113).

GlassRatner filed its Second Interim Fee Application (Case No. 15-58440 Doc. No. 1174) on August 9, 2019 seeking fees and expenses incurred from April 1, 2019 through July 31, 2019.  No objections were stated.  The Court entered an order approving the request and authorizing the Trustee to pay GlassRatner $22,789.58 in fees and $384.65 expenses, for a total of $23,174.23 for Sugarloaf (Case No. 15-58440 Doc. No. 1197).

GlassRatner filed its Third Interim Fee Application (Case No. 15-58440 Doc. No. 1267) on November 20, 2019 seeking fees and expenses for the period August 1, 2019 through November 15, 2019, including fees and expenses related to the mediation.  No objections were filed, and the Court granted the request for $10,485.25 for fees and $14.93 for expenses specific to Sugarloaf (Case No. 15-58440 Doc. No. 1271).

GlassRatner's Fourth Interim Application (Case No. 15-58440 Doc. No. 1348) was filed on March 23, 2020, seeking fees in the amount of $14,704.50 and expenses of $179.79 from November 16, 2019 through February 29, 2020.  No objections were filed, and the Court approved the application on April 14, 2020 (Case No. 15-58440 Doc. No. 1381).

GlassRatner filed its Fifth Interim Application (Case No. 15-58442 Doc. No. 145) on July 21, 2020 seeking fees in the amount of $8,449.50 and expenses of $8.43 for the period March 1, 2020 through June 30, 2020.  Mr. Thakkar filed an objection (Case No. 15-58442 Doc. No. 149),

which the Court considered at a hearing on August 13, 2020.  The Fifth Interim Application was approved in full on August 14, 2020 (Case No. 15-58442 Doc. No. 153).

GlassRatner filed its Sixth and Final Application for Compensation on August 26, 2020 (Case No. 15-58442 Doc. No. 162) requesting $3,553.70 in actual fees and $4.70 in expenses (plus estimated fees) through August 25, 2020.  Mr. Thakkar again objected (Case No. 15-58442 Doc. No. 170).

GlassRatner filed a Supplement to Final Fee Application (Case No. 15-58442 Doc. No. 188) on October 13, 2020 stating since August 25, 2020 it incurred an additional $3,674.50 in connection with managing the Debtor's property and preparing monthly operating reports and $2,655.00 related to the hearing on the Applications.  It estimated it would incur additional fees through dismissal of the case, though the Supplement did not specify the basis for the estimated fees.  By Order dated November 6, 2020 (Case No. 15-58442 Doc. No. 196), the Court directed GlassRatner to clarify certain issues in the Supplement, which it did on November 12, 2020 (the "Clarification").  In the Clarification, which replaces the Supplement, GlassRatner sought actual fees incurred from August 19, 2020 through October 31, 2020 of $8,087.50 in fees and $2.00 in expenses.  This includes the fees previously estimated in the Sixth and Final Application and the Supplement.

D.    Summary of Objections

Mr. Thakkar objected to GlassRatner's Applications.  The Court held an evidentiary hearing on the Applications on October 6, 2020,[3] which was continued to October 14 and 15, 2020.

---

[3] On October 1, 2020, Mr. Thakkar filed a Motion for Continuance seeking to continue the evidentiary hearing scheduled for October 6, 2020 and asking the Court to consider his request on an expedited basis (Case No. 15-58442 Docs. Nos. 177 & 178).  The Court granted the request for expedited consideration and held a telephonic hearing on the Motion for Continuance on October 1, 2020, after which it denied the Motion for Continuance (Case No. 15-58442 Doc. No. 181).  At 6:27 a.m. on October 6, 2020, the morning of the scheduled hearing, Mr. Thakkar filed a Second Motion for Continuance (Case No. 15-58442 Doc. No. 158) in which he again sought to continue the evidentiary hearing for a period of 45 days.  The Court considered the request at the hearing on October 6, 2020 and found no

Counsel for the Chapter 11 Trustee, Frank DeBorde and Lisa Wolgast, and counsel for Mr. Thakkar, Denise Dotson, appeared in person, while counsel for Gateway, Clay Townsend, appeared by telephone. Frank DeBorde, Ron Glass, Joel Murovitz, and Mr. Thakkar testified. After hearing and receiving evidence and argument from counsel, the Court took the matter under advisement. On October 21, 2020, Mr. Thakkar filed a supplemental objection to GlassRatner's fees in which he restated his objections previously presented at the hearing on the Applications (Case No. 15-58443 Doc. No. 193, amended at Doc. No. 194), to which the Trustee responded (Case No. 15-58443 Doc. No. 195).

After reviewing the objections and clarifying the points of objection at the hearing, the Court categorizes the objections to the GlassRatner Applications as follows:

1. The time spent managing the property was excessive
2. The work performed by Mr. Dopp on the contribution analysis did not benefit the Sugarloaf estate.
3. The time spent attempting to sell the remaining property was only for the benefit of Gateway and was unnecessary.
4. The time incurred defending the Applications is not recoverable.

The Court will address each contention.

## II.  LAW ON FEE APPLICATIONS

"Reasonable" compensation for trustees and their professionals is permitted under 11 U.S.C. § 330 for "actual, necessary services rendered by the trustee" or his professional. 11 U.S.C. § 330(a)(1)(A). The burden is on the professional seeking compensation to prove that the requested compensation is reasonable. See In re Dabney, 417 B.R. 826, 834 (Bankr. N.D. Ga. 2009). Reasonableness is determined by applying a lodestar analysis, looking at the hours reasonably spent and the reasonable hourly charge. See Norman v. Housing Authority of the City

---

cause to continue the evidentiary hearing. Accordingly, it denied Mr. Thakkar's Second Motion to Continue (Case No. 15-58442 Doc. No. 186).

of Montgomery, 836 F.2d 1292, 1299 (11th Cir. 1988).  To determine whether the hourly rates and

number of hours expended are reasonable, the Court must take into account all relevant factors,

including those specified in section 330.  The statute provides that courts should consider the

following:

> (A) the time spent on such services;
> (B) the rates charged for such services;
> (C) whether the services were necessary to the administration of, or beneficial at
> the time at which the service was rendered toward the completion of, a case under
> this title;
> (D) whether the services were performed within a reasonable amount of time
> commensurate with the complexity, importance, and nature of the problem, issue,
> or task addressed;
> (E) with respect to a professional person, whether the person is board certified or
> otherwise has demonstrated skill and experience in the bankruptcy field; and
> (F) whether the compensation is reasonable based on the customary compensation
> charged by comparably skilled practitioners in cases other than cases under this
> title.

11 U.S.C. § 330(a)(3).  Bankruptcy courts "must also consider whether the bankruptcy assets were

administered as economically as possible and whether any of the services rendered were

duplicative[.]"  Grant v. George Schumann Tire & Battery Co., 908 F.2d 874, 878 (11th Cir. 1990).

The size of a fee request may invite a close review, but size alone is not grounds to disallow

a fee.  In re Marshall, 2010 WL 3959612, at *63 (Bankr. E.D. Va. Oct. 11, 2010).  Instead, the

court must consider fees in the context of the tasks undertaken and whether they are reasonable

and necessary, looking at the nature of the problems faced, the work done to address them, and

any opposition or cooperation the trustee received.  The leading case with regard to the factors to

be considered in determining a reasonable allowance of compensation for professionals is Johnson

v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974), in which the court considered the

following twelve factors:

> (1) the time and labor required;
> (2) the novelty and difficulty of the questions presented by the case;

(3) the skill requisite to perform the [ . . . ] service properly;
(4) the preclusion of other employment by the [professional] due to acceptance of a case;
(5) the customary fee for similar work in the community;
(6) whether the fee is fixed or contingent;
(7) time pressures imposed by the client or the circumstances;
(8) the amount involved and results obtained as a result of the [professionals'] services;
(9) the experience, reputation and ability of the [professionals];
(10) the desirability of the case;
(11) the nature and length of the professional relationship with the client; and
(12) awards in similar cases.

Id. at 717-719.  Each Johnson factor must be considered in light of the other factors.  Neville v.

Eufaula Bank & Trust Co. (In re U.S. Golf Corp.), 639 F.2d 1197, 1205 (5th Cir. 1981).

In order to properly object to an application for compensation, the objecting party must

prove, with specific evidence, that the requested fees are unreasonable.  See In re SGE Mortgage

Funding Corp., 301 B.R. 915, 917 (Bankr. M.D. Ga. 2003).  A general objection to all fees and

expenses is not proper, and "[g]eneral dissatisfaction or a disagreement over business judgment

will not suffice" to support an objection to fees.  Id.; see also In re Golf Augusta Pro Shops, Inc.,

2004 WL 768576, at *2 (Bankr. S.D. Ga. Feb 6, 2004) (overruling objection that generally

complained that certain tasks were not necessary and applicant spent too much time on them

without providing specific details).

Additionally, section 330(a)(4)(A) provides that a court should not award compensation

for certain services.  The section states:

Except as provided in subparagraph (B), the court shall not allow compensation
for—
        (i) unnecessary duplication of services; or
        (ii) services that were not—
                (I)      reasonably likely to benefit the debtor's estate; or
                (II)     necessary to the administration of the case.

11 U.S.C. § 330(a)(4)(A).  Examples of services that do not benefit the estate are work performed

on non-bankruptcy matters, services rendered to benefit the debtor personally, and services that

13

were actually in opposition to the estate's administration.  See In re Watervliet Paper Co., 109 B.R. 733, 735 (Bankr. W.D. Mich. 1989).

But professional services may be "reasonably likely" to benefit a Chapter 11 estate even if no plan of reorganization is proposed or confirmed.  In re Macco Props., Inc., 540 B.R. 793, 868 (Bankr. W.D. Okla. 2015).  "Benefit to the estate . . . is not restricted to success measured by confirmation of a plan or the prospect of confirming a plan."  In re Kitts Dev., LLC, 474 B.R. 712, 721 (Bankr. D.N.M. 2012).  A professional does not have to be 100 percent successful.  In re Cenargo Int'l, PLC, 294 B.R. 571, 596 (Bankr. S.D.N.Y. 2003).  The question is whether a reasonable trustee and his professionals would have believed a particular service would benefit the estate.  Id. at 595–96.  For example, advice and services may benefit the estate "by maximizing value for creditors through an orderly or emergency liquidation of assets by Section 363 sales."  Kitts Dev., 474 B.R. at 721.  Moreover, "[t]he appropriate time for measuring benefit to the estate is as of the time the services are provided, and not at the time the court ultimately reviews the fee application."  Macco Props., 540 B.R. at 868 (quoting In re Schupbach Investments, LLC, 521 B.R. 449 (table) (B.A.P. 10th Cir. 2014)).  Thus, "[c]ourts may allow compensation where [ . . . ] services promoted the bankruptcy process and contributed to the administration of the estate [even if they] did not otherwise provide an economic benefit to the estate."  Id.

"In addition, necessary and actual fees are allowable in situations where the fees are unavoidably incurred, . . . even if they are not of a benefit to the estate.'"  Macco Props., 540 B.R. at 868 (quoting Van Cott, Bagley, Cornwall & McCarthy v. B.R.&F., L.C. (In re Ricci Inv. Co.), 217 B.R. 901, 907 (D. Utah 1998)).  The amount of time reasonably necessary in a particular case depends in part on the vigor with which opponents dispute the issues, and a professional cannot be expected to ignore objections made by opposing parties.  See Macco Props., 540 B.R. at 871.  For

14

example, courts often find services are necessary, even if they do not ultimately benefit the estate, where there are many obstacles to closing a sale and incurring fees is essentially unavoidable.  See id.  Professionals must also comply with the direction of the court.  See Ricci Inv. Co., 217 B.R. at 906-07 (finding fees were necessarily incurred where counsel had no choice but to respond to objections and go forward with the scheduling order as mandated by the court).

## III.    STANDING

Before addressing the specific objections, the Court must address Mr. Thakkar's standing to object.  According to his objections, he is objecting just as Mr. Thakkar, and he does not identify another capacity in which he is objecting.  Likewise, on cross examination, Mr. Thakkar did not know in what capacity he was objecting.  In his supplemental response, he states he has standing because of the Westmoore debt.  At the hearing, his counsel stated he has standing for three reasons because: 1) he is the former manager of the Debtor; 2) he is the manager of the equity interest holder; and 3) he is a guarantor of the Westmoore debt (a reduction in fees resulting in a greater distribution to Westmoore benefits him personally through a reduction in his guaranty).   No evidence was presented on any of these points.

Under section 1109(b), "[a] party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b).  But, even if an objector does not qualify as a party in interest under this section, the bankruptcy court has a duty to review fee applications notwithstanding the absence of objections by the trustee, debtor, or creditors."  Lobel & Opera v. U.S. Trustee (In re Auto Parts Club, Inc.), 211 B.R. 29, 33 (B.A.P. 9th Cir. 1997) (citing In re Busy Beaver Building Centers,

Inc., 19 F.3d 833, 841 (3d Cir. 1994)); 11 U.S.C. § 330.  Bankruptcy judges have broad discretion

in reviewing and awarding professional fees and expenses.  See Grant, 908 F.2d at 878.

For example, in In re Sarkis Investments Co., LLC, 2019 WL 9243005, at *6 (Bankr. C.D.

Cal. Sept. 5, 2019), the fee objector was a beneficiary of a trust, which was the sole member of the

limited liability company that was the sole member of another limited liability company that was

the debtor's sole equity interest holder.  The court found the objector did not have standing as a

party in interest because she did not have a legal right that could be affected by the fee applications.

Id. at *8.  The court continued, however, to review the fee requests, noting the court has an

independent duty to investigate the reasonableness of compensation even in the absence of any

objection voiced by a party in interest.  Id. at *10.

As the Court noted at the hearing on October 6, 2020, though Mr. Thakkar has been the

manager of the Debtor and aided in driving the Debtors' cases, his standing is attenuated.

Nevertheless, the Court allowed Mr. Thakkar to proceed, noting the Court has an independent duty

to review professional fees.  Just as the court found in Sarkis Investments Co., this Court finds it

must consider the reasonableness of the compensation requested and will review each of the

Applications.

## IV.    OBJECTIONS TO APPLICATIONS

Although Mr. Thakkar raised numerous objections, no dispute exists as to many of the

factors the court must consider under section 330 and Johnson.  There is no dispute that the time

claimed by GlassRatner was actually spent, and the Court finds the time is accurately recorded.

There is no dispute as to the reasonableness of the rates or that GlassRatner has the skill and

experience to render the services.  The Court finds the rates to be reasonable and customary and

GlassRatner is skillful and experienced.

The fees for a professional for a trustee are both fixed and contingent. On one hand, the amount to be paid is fixed by an hourly rate; on the other hand, the fee has an element of contingency since the amount a court will allow is uncertain as is the availability of assets to pay the allowed fees. GlassRatner has a long-standing relationship with the Trustee as he is a named principal of the firm. This relationship made communication and coordination with the Trustee more efficient. Mr. Thakkar's objections are focused on 1) whether the services were necessary to the administration of or beneficial to the estate, and 2) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the task.

In reviewing the Applications, the Court is particularly aware that assisting a Chapter 11 trustee is a unique and complex assignment. The Court notes a Chapter 11 trustee is only appointed in certain circumstances. The appointment of a Chapter 11 trustee is an extraordinary remedy and is the exception, rather than the rule. See In re Intercat, Inc., 247 B.R. 911, 920 (Bankr. S.D. Ga. 2000). Once appointed, a Chapter 11 trustee's duties run to the estate and not a specific creditor. In re Vill. Concepts, Inc., 2019 WL 2252497, at *4 (Bankr. E.D. Cal. May 17, 2019). The trustee and his financial advisor are thrown into a case they know nothing about. That is especially true here since the cases were pending for over three years and the docket included over 900 entries by the time the Trustee was appointed. Moreover, when a trustee is appointed in a Chapter 11 case, by definition, something is awry in the case and the trustee is expected to act immediately to secure assets and address the issues causing the appointment. Almost always, a trustee's presence in a Chapter 11 case is unwelcome by the debtor, and obtaining cooperation is typically more challenging than if the professional were representing the debtor. The Court must therefore

consider the situation in which GlassRatner found itself as a result of the Court's appointment of a trustee when reviewing the Applications.

## I.   ANALYSIS OF GLASS RATNER'S APPLICATIONS

### A.   Dopp Report

When the Trustee was appointed, the Trustee was tasked with investigating the potential contribution claim of Bay Circle against NRCT and any other Debtors. The Trustee asked GlassRatner to use its expertise and analyze possible claims by Bay Circle against the other Debtors, taking into account payments made by the different Debtors and other obligors both before and after the filing of the petition. Paul Dopp of GlassRatner conducted this analysis and produced a report (Case. No. 15-58440 Doc. No. 1030 Ex. 1) suggesting possible claims based on various assumptions. The parties have referred to this report as the Dopp Report. Mr. Thakkar contends Sugarloaf should not be charged with the efforts of Mr. Dopp. He relies on the provisions of the adequate protection order in which the Court awarded Gateway an adequate protection claim, but specifically excluded any claim for a lien on property owned by Sugarloaf (Case No. 15-58440 Doc. No. 797). This limitation was imposed as a result of Simba's opposition to the granting of a lien on any collateral on which it held a lien. The opposition, and the resulting order, did not limit Bay Circle's right to assert a claim against Sugarloaf, only a subrogated lien on its property. The Court amended the order on July 2, 2019 (Case No. 15-58440 Doc. 1125) to clarify certain points, including that the adequate protection liens granted were only on the proceeds of a claim and not on the claim itself.

Mr. Thakkar argues that the Court's orders carve Sugarloaf out from the contribution claim and GlassRatner's time spent analyzing the contribution claim should not be attributable to Sugarloaf. His position is overstated. The Court's order focused on the fact NRCT paid nothing

toward the Wells Fargo debt, but the Court did not exclude the possibility of contribution claims against others.  Because Sugarloaf paid $7.5 million to Wells Fargo, while Bay Circle paid about $5.3 million, it is unlikely Bay Circle would have a claim against Sugarloaf, but these figures are simplified and do not account for all facts, including all pre-petition payments made by the Debtors.  Moreover, the order did not exclude Sugarloaf from claims for contribution, only from any lien on its property.  Because the contribution analysis required a review of *all* payments made by *all* Debtors on the debt, it is appropriate for GlassRatner to divide the time incurred in conducting the analysis among all Debtors.

      B.     <u>Property Management</u>

Mr. Thakkar alleges the time GlassRatner spent on property management is excessive.  He contends an outside management company would have charged less and no more than 5% of collections.  Based on the operating reports, the Court used monthly billings of $48,502 and a 5% management fee for the 21 months the Trustee operated the property and calculates this number to be approximately $51,000.  But Mr. Murovitz testified that a traditional management company is unlikely to manage a property in bankruptcy with no set term provided.  He also explained that a traditional management company would not undertake several tasks GlassRatner completed, such as negotiating with tenants over delinquencies and early termination, dealing with personal injury claims, addressing a commercial owners association, and even considering new leases.  Usually, an owner plays a role in those areas or a leasing agent is retained.  Here, GlassRatner was acting in all roles since the Trustee was the owner and the manager.

A review of the GlassRatner fees under the category "Business Operations" (which appears to capture all property management activities) shows the total fees in the Second Interim Fee Application through the Clarification to be $38,301.68.  The First Interim Fee Application does

not use the label "Business Operations," but based on the Court's review, it concludes $14,178.75 of fees and expenses in the First Interim Fee Application were incurred for business operation activities. This totals $52,480.43 incurred by GlassRatner in "Business Operations" of the Debtor, which is less than $1,500 over a 5% calculation. This fee also includes more services than would typically be included in a management contract. The Court finds the fees incurred for property management to be reasonable.

      C.    <u>Work Benefitting Gateway</u>

Mr. Thakkar contends the Trustee should have taken virtually no action after the sale of 1930 Satellite Blvd. was approved on May 2, 2019 and GlassRatner should not be compensated for its time thereafter. He contends that, after the sale, no other actions benefited the estate. The estate had approximately $1.4 million in net proceeds that were unencumbered and sufficient to pay all unsecured claims and administrative expenses. Mr. Thakkar argues that all other actions were for the benefit of Gateway, which should bear its own expenses, and the Trustee should not have taken positions on Gateway's behalf. The Trustee and GlassRatner argue the Trustee owed a duty to all claimants and constituencies to investigate claims and to provide for equal treatment to all creditors, even if Gateway benefitted.

As stated above, Gateway's claims against Mr. Thakkar personally, against his sons, and against various non-debtor entities have lurked behind these cases from the beginning. But the Court has always attempted to only rule on matters involving these Debtors and to not otherwise rule, or even hear, about the Gateway claims. The Court disallowed all of Gateway's claims, except its secured claim against Bay Circle. The Court denied its motions for relief from stay. The Court ruled in favor of Bay Circle in two adversary proceedings involving Gateway. The Court denied Gateway's motion for substantive consolidation and its request to pierce the

corporate veil. The Court previously expressed its opinion, in connection with plan confirmation in several of the cases, that it is not obligated to decide disputes between Gateway and the Thakkars involving ownership of the Debtors. Accordingly, the Court is aware of and alert to Mr. Thakkar's concern. At the same time, though, this Court is not an instrument of Mr. Thakkar's to be manipulated against Gateway. And the mere fact Gateway may benefit from a proper disposition of property and claims in this case is not a reason for the Trustee to avoid taking those actions. To evaluate the Trustee's motives and decisions, the Court must view them in the light of the information available and the positions taken by the parties at the time.

Mr. Thakkar argues the Trustee did not need to try and sell 1950 and 1970 Satellite Blvd. and any sale would only generate proceeds for equity, including Gateway. Shortly after the Trustee was appointed, the Trustee filed an Application to Employ Akerman & Co. as Real Estate Broker with Respect to Sugarloaf Centre, LLC Property (Case No. 15-58440 Doc. No. 994), and Documents in Support of Application to Employ Akerman & Co. as Real Estate Broker with Respect to Sugarloaf Centre, LLC Property (Case No. 15-58440 Doc. No. 1002). The Court held a hearing on the applications on March 28, 2019. The Court did not authorize retention of a broker as to 1950 and 1970 Satellite Blvd., but it stated the application could remain on the docket and the Trustee could seek to have the matter heard again at a later time. The Trustee noted he had received a conditional offer, and the Court allowed the Trustee to continue to consider a sale of the property if appropriate. At that time, the Trustee believed that the secured debt on the property (the Simba Note) totaled only $3 million and, according to the Court records, the maturity date was October 2019. He believed there was equity in the property and did not want equity to lose any value by virtue of a motion for relief from stay and foreclosure after the maturity date.

Moreover, a secured creditor is a creditor in the case and is entitled to be paid, so it was appropriate for the Trustee to consider a means to pay the secured claim.

The Application to Employ Akerman remained on the docket.  After the sale of the 1930 Satellite Blvd. property, all parties engaged in mediation concerning several issues including whether additional property should be sold.  When the mediation concluded with no agreement, the question was what to do next.  After a hearing on January 16, 2020, the Court denied the application to retain a broker to market Sugarloaf's remaining property without prejudice, stating it wanted to see where the case was headed and whether it would be necessary to sell additional property, because it appeared that sufficient funds existed to satisfy Sugarloaf's creditors. GlassRatner spent no more time on an attempted sale after this date.

At the January 16, 2020 hearing, the Court also announced it would set deadlines to move the cases towards resolution and an ultimate disposition.  The Court set February 18, 2020 as the deadline for filing plans, absent which the Court would convert the Sugarloaf case to Chapter 7. Still believing there was equity in the Sugarloaf property, the Trustee decided to file a Chapter 11 plan rather than convert the case.  While Gateway may have benefited from any equity in the property by virtue of its claim to NCT, the Thakkars also benefited from equity.

Mr. Thakkar also opposed conversion and filed his own plan.  His plan, though, set off a fire storm of confusion.  Rather than identifying the secured creditor known to the Trustee (Westmoore), Mr. Thakkar took the position that the secured debt was held by Red Chillies, which he managed.  He failed to state the amount allegedly owed.  Even more importantly, Mr. Thakkar took the position that unpaid interest was an administrative expense claim and that the unsecured claim of Nilhan Financial would only be paid after all administrative expense claims, secured claims, and unsecured claims were paid.  Thus, he proposed to distribute cash to himself first,

surrender the property to his company, Red Chillies, and pay Nilhan Financial nothing.  The Court

views this as part of Mr. Thakkar's ongoing litigation strategy against Gateway.

Nilhan Financial was a Thakkar affiliate and was scheduled by Sugarloaf as being owed

$146,367.00 as an undisputed and unliquidated debt.  However, Nilhan Financial ended up in a

Chapter 7 bankruptcy case of its own in Florida as a result of Gateway's collection efforts.

Gateway stood to receive 50% of any distributions received by the Nilhan Financial Trustee.  As

stated above, the fact Gateway may benefit is not a reason to disregard the Bankruptcy Code and

the obligations of the Trustee.  The Trustee rightfully found the refusal to pay Nilhan Financial

inappropriate since Nilhan Financial retained an allowed unsecured claim.  Moreover, the Trustee

was justifiably suspicious that suddenly the principal of the Debtor claimed to own the secured

debt and asserted his company should receive virtually all the cash and the real property.  As

explained above, an investigation into the facts was warranted, and not primarily for Gateway's

benefit.

Mr. Thakkar urges the Court to find the Trustee was acting only to protect a potential

Gateway interest in the equity of the equity holder by objecting to Westmoore's claim and that

such actions were inappropriate.  The Court disagrees.  At this point, the Trustee was still trying

to get the documents from Mr. Thakkar and/or Westmoore to substantiate who held the debt and

the balance due thereon.  Once those were obtained, the Trustee did exactly what Mr. Thakkar

wanted and proceeded to negotiate a settlement that resulted in subordinating Westmoore's claim

and dismissing the case with one noticeable difference: the settlement pays Nilhan Financial in

full in accordance with the Bankruptcy Code.

Reviewing all the facts in the light of what was known at the time, the Court does not find

the Trustee acted only on behalf of Gateway.  Mr. Thakkar is correct that the fees in this case are

greater than expected, but that is largely driven by Mr. Thakkar's own actions and the failure of Mr. Thakkar and Westmoore to be fully transparent when the issue of the secured debt came to light.   The Court finds GlassRatner's fees were unavoidably and necessarily incurred by responding to these events outside its control.  The Court finds no basis for reducing the fees as being for Gateway's benefit.

     D.     <u>Time Defending Applications</u>

In its Clarification GlassRatner seeks $3,304.00 in fees for its time spent defending the Applications against opposition.  Mr. Thakkar opposes these fees and contends a bankruptcy court cannot award professional fees under section 330(a)(1) for work performed in defending a fee application in court pursuant to the Supreme Court's decision in <u>Baker Botts, LLP v. ASARCO, LLC</u>, 576 U.S. 121 (2015).

In <u>ASARCO</u>, the bankruptcy court authorized the debtor in possession, ASARCO, to retain Baker Botts as counsel to represent it in its Chapter 11 case.  ASARCO reorganized and Baker Botts filed its final application for compensation seeking compensation under section 330.  ASARCO objected to the amount of compensation.  The bankruptcy court awarded Baker Botts compensation for representing the estate in the Chapter 11 case and for fees incurred in litigating the fee application with ASARCO.  The Fifth Circuit Court of Appeals reversed as to the reimbursement of the fees incurred in defending the law firm's fee applications, and the Supreme Court agreed with the Fifth Circuit that section 330(a) does not permit compensation for fee-defense litigation.  <u>ASARCO</u>, 576 U.S. at 124.

The Supreme Court started with the presumption that the American Rule applied and prohibited shifting professional fees from one party to another unless a statute or contract provided otherwise.  In <u>ASARCO</u>, the debtor's counsel was litigating against the estate, so requiring the

estate to pay the fees of the professional would shift the responsibility for paying the fees.  Id. at

128.  The Court then looked to see if there was a statutory provision that would override the

American Rule and permit bankruptcy courts to award compensation to counsel for its fee-defense

litigation.   The Court examined section 330 and concluded "litigation in defense of a fee

application is not a 'service' within the meaning of § 330(a)(1)" for which counsel could be

compensated.  Id. at 131.  The Court acknowledged that fees can be awarded for work performed

in *preparing* a fee application under section 330(a)(6), but it found no similar basis for approving

compensation for fees incurred in *defending* a fee application.  Id. at 132.  The Supreme Court

concluded: "Section 330(a)(1) itself does not authorize the award of fees for defending a fee

application, and that is the end of the matter."  Id. at 134.

GlassRatner argues that while professional fees are generally not compensable for

defending a fee application, the result is different where a professional employed by the estate

seeks fees incurred to defend its fees against an attack brought by a party other than the estate.

GlassRatner relies on In re Macco Props., 540 B.R. 793, in which the bankruptcy court concluded

ASARCO was inapplicable where the Chapter 11 trustee and estate professionals sought

compensation from the estate and were defending their applications against third party objections.

The Macco Props. court pointed out that the case before it involved the estate defending itself

against a third-party, counsel and the trustee were not adversaries, and therefore it did not implicate

the American Rule on fee shifting as the estate was paying its own fees.  The court then concluded

that, under section 330(a)(1), counsel's work defending its fee application constituted an "actual,

necessary service" for the Chapter 11 trustee in completing the administration of the estate.  Id. at

878.

Subsequent courts have disagreed that <u>ASARCO</u> is limited to circumstances in which a estate objects to a fee application[4] because, contrary to the determination by the court in <u>Macco Props.</u>, defending a fee application is not a service that is necessary to complete the administration of the estate.  As one court explained, "[a] trustee simply is not rendering a 'service' to a bankruptcy estate by defending his own application." <u>In re Morreale</u>, 2019 WL 3385163, at *12 (Bankr. D. Colo. July 3, 2019) (citing <u>ASARCO</u>, 576 U.S. at 131); <u>see also</u> <u>In re Stanton</u>, 559 B.R. 781, 782 (Bankr. M.D. Fla. 2016) (stating <u>ASARCO</u> held that section 330(a) does not authorize professional fees for work performed defending a fee application because that work is not performed for the estate").  Even the dissent in <u>ASARCO</u> recognized that "a professional's defense of a fee application is not a 'service' within the meaning of the Code." <u>Id.</u> at *7 (quoting <u>ASARCO</u>, 576 U.S. at 136).  In defending fee applications, counsel is not rendering a service that will benefit the bankruptcy estate; instead, fee defense work is done for the benefit of the professional.

The Court finds <u>ASARCO</u> prohibits the Trustee's professionals from collecting fees incurred in defending their fee applications.  Because the expenses incurred by GlassRatner are subject to review under section 330, and because the Supreme Court's binding decision in <u>ASARCO</u> clearly states litigation in defense of a fee application is not a "service" within the meaning of section 330(a)(1) for which counsel could be compensated, the Court holds GlassRatner is not entitled to fees incurred in defending the Applications.[5]

Courts recognize, however, that in certain circumstances they may award fees as a sanction for abusive litigation tactics.  Bankruptcy courts have authority under Bankruptcy Rule 9011, the

---

[4] As some have noted, "[e]ven in circumstances where bankruptcy debtors or trustees do not object, fee defense fees are still not compensable." <u>In re Morreale</u>, 2019 WL 3385163, at *9 (Bankr. D. Colo. July 3, 2019).
[5] While Thakkar acknowledges that GlassRatner has an indemnification provision in its retention documents related to fees incurred in connection with defending their fee applications, courts have held similar indemnification provisions in engagement letters run afoul of <u>ASARCO</u> and are not permitted.  <u>See e.g.</u>, <u>In re Boomerang Tube, Inc.</u>, 548 B.R. 69 (Bankr. D. Del. 2016).

bankruptcy counterpart to Fed. R. Civ. P. 11, which provides a court may sanction a party who files a document for an improper purpose, such as to harass or to cause unnecessary delay or cost. Fed. R. Bankr. P. 9011(b), (c); Chambers v. NASCO, Inc., 501 U.S. 32, 46 (1991).  Bankruptcy courts can also impose sanctions under section 105 to punish a professional who "unreasonably and vexatiously multiplies the proceedings before them."  In re River Rd. Hotel Partners, LLC, 536 B.R. 228, 242 (Bankr. N.D. Ill. 2015) (quoting In re Volpert, 110 F.3d 494, 500 (7th Cir. 1997)).  The Court also has the inherent power to sanction a litigant for bad-faith conduct, but such power must be exercised with "restraint and discretion."  Chambers, 501 U.S. at 44.  Sanctions are the exception, not the norm, and should not be imposed lightly, "even in the face of aggressive litigation tactics and strategy."  Kramer v. Mahia (In re Khan), 488 B.R. 515, 528 (Bankr. E.D.N.Y. 2013), aff'd sub nom. Dahiya v. Kramer, 2014 WL 1278131 (E.D.N.Y. Mar. 27, 2014), aff'd, 593 F. App'x. 83 (2d Cir. 2015).

Sanctions are not appropriate in this case.  GlassRatner does not argue Mr. Thakkar violated Rule 9011, and the Court does not find Thakkar's objections were made in bad faith or for an improper purpose.  Mr. Thakkar aggressively pursued his objections and the Trustee's professionals were equally aggressive in their defense.  Just because Mr. Thakkar pursued his objections does not mean he engaged in an abuse of the judicial process or conduct that unreasonably and vexatiously multiplied the proceedings.  Substantial fees and expenses are at stake in this case, and Mr. Thakkar acted to protect his interests and undoubtedly believed his objections were well-founded.  The standards for imposing sanctions are necessarily stringent and have not been satisfied here.  Accordingly, the Court will not impose sanctions.  The Court finds GlassRatner is not entitled to recover the $3,304.00 incurred in preparing for and participating in hearings on the Applications.

## II.    CONCLUSION

For the reasons stated above, the Court will approve all of GlassRatner's fees with the exception of $3,304.00 of fees incurred in connection with defending the Applications. GlassRatner sought final approval of all fees and expenses previously awarded plus an additional $11,641.20 in fees and $6.70 in expenses.  All fees and expenses previously awarded are approved on a final basis and GlassRatner is awarded $8,343.90 in additional fees and expenses on a final basis.

**<u>END OF ORDER</u>**

**Distribution List**

Lisa Wolgast
Frank W. DeBorde
Morris, Manning & Martin, LLP
3343 Peachtree Rd., N.E., Suite 1600
Atlanta, Georgia 30326

M. Denise Dotson
M. Denise Dotson, LLC
PO Box 767
Avondale Estates, GA 30002

Valerie K. Richmond
Burr & Forman LLP
171 17th Street, Suite 1100
Atlanta, Georgia 30363

Walter E. Jones
Balch & Bingham LLP
30 Ivan Allen Jr. Boulevard, N.W., Suite
700
Atlanta, GA 30308

Clay M. Townsend
Morgan & Morgan, P.A.
20 North Orange Avenue, Suite 1500
Orlando, FL 32801

Paul Reece Marr
Paul Reece Marr, P.C.
Suite 960
300 Galleria Parkway, N.W.
Atlanta, GA 30339

Henry F. Sewell, Jr., Esq.
Law Offices of Henry F. Sewell, Jr. LLC
2964 Peachtree Road, NW
Suite 555
Atlanta, Georgia 30305

David Weidenbaum
Office of the U.S. Trustee
Room 362
75 Ted Turner Drive, SW
Atlanta, Georgia 30303