**IT IS ORDERED as set forth below:**



Date: August 8, 2022

_____
**Wendy L. Hagenau
U.S. Bankruptcy Court Judge**

_____

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| IN RE: | CASE NO. 15-58442-WLH |
| SUGARLOAF CENTRE, LLC, | CHAPTER 11 |
| Debtor, | |

**ORDER ON MOTION TO VACATE, ALTER, OR AMEND THE ORDERS ON FINAL APPLICATIONS FOR COMPENSATION OF THE TRUSTEE AND HIS FINANCIAL ADVISOR AND CHITTRANJAN THAKKAR'S MOTION TO (1) REMOVE AND BAR THE CHAPTER 11 TRUSTEE; (2) DISQUALIFY AND BAR GLASSRATNER ADVISORY & CAPITAL GROUP, LLC, ACCOUNTANTS FOR THE TRUSTEE; (3) DISGORGE ANY FEES AND EXPENSES OF THE TRUSTEE AND THE TRUSTEE'S FINANCIAL ADVISOR**

**THIS MATTER** is before the Court on the Response to Notice of Proposed Payments and Motion to Vacate, Alter or Amend the Orders on Final Applications for Compensation of Glass Ratner Advisory & Capital Group, LLC and Ronald L. Glass, Chapter 11 Trustee (Doc. No. 296) and Chittranjan ("Chuck") Thakkar's Motion to (1) Remove and Bar the Chapter 11 Trustee;

1

(2) Disqualify and Bar GlassRatner Advisory & Capital Group, LLC, Accountants for the Trustee;

(3) Disgorge any Fees and Expenses of the Trustee and The Trustee's Financial Advisor (Doc. No. 301) (the "Motions"). Ronald L. Glass, Chapter 11 Trustee ("Mr. Glass" or the "Trustee") and Glass Ratner Advisory & Capital Group, LLC ("GR") opposed the Motions. The Court held a hearing on the Motions on July 14, 2022 and a continued hearing on the Motions on July 28, 2022. Representatives for Chuck, Niloy, and Rohan Thakkar; Morris, Manning, & Martin, LLP ("MMM"); Ron Glass; GR; the United States Trustee; and Westmoore Lending Partners, IV, LLC ("Westmoore") appeared. The Court's oral ruling at both hearings is incorporated herein.

**Background and Facts**

Sugarloaf Centre, LLC ("Sugarloaf"), with Nilhan Developers, LLC ("Nilhan Developers"), NRCT, LLC ("NRCT"), Bay Circle Properties, LLC ("Bay Circle"), and DCT Systems Group, LLC ("DCT") (collectively the "Debtors"), each filed a petition for relief under Chapter 11 of the Bankruptcy Code on May 4, 2015. The cases were procedurally consolidated. The immediate reason the Debtors filed bankruptcy was their default on a series of loan agreements with Wells Fargo Bank, N.A. Over the long history of the bankruptcy cases, the cases were also impacted by litigation between Chuck Thakkar (the manager of each of the Debtors) and his family, on the one hand, and Good Gateway, LLC and SEG Gateway, LLC (collectively "Gateway"), on the other. Prior to the filing of the bankruptcy petitions, Gateway obtained judgments in the amounts of $2.5 million and $12 million against Mr. Thakkar and other non-debtor entities in a Florida state court.

On October 10, 2018, after learning about actions taken without Court approval in the Nilhan Developers case, the Court entered an order requiring the parties to show cause why a trustee should not be appointed. After a hearing on the show cause order, the Court appointed a

2

trustee in all five cases. On December 11, 2018, the U.S. Trustee filed a Notice of Appointment of Chapter 11 Trustee and Setting of Bond (Case No. 15-58440 Doc. No. 920), and an Application for Approval of Appointment of Trustee (Case No. 15-58440 Doc. No. 921). That same day, the Court entered an order granting the Motion for the Appointment of a Chapter 11 Trustee (Case No. 15-58440 Doc. No. 919), and an order approving Mr. Glass as Trustee (Case No. 15-58440 Doc. No. 922).

On December 20, 2018, the Trustee filed an Application to Employ GR as Financial Advisor (Case No. 15-58440 Doc. No. 934). GR is a firm named for Mr. Glass and Ian Ratner ("Mr. Ratner"). It has provided services for many years in the Atlanta market and elsewhere, including forensic accounting, workout and restructuring services, and services as a trustee, receiver, and chief restructuring officer. The Court granted the application to employ GR on January 22, 2019 (Case No. 15-58440 Doc. No. 965).

Eventually, the Trustee moved forward in each case to bring matters to a posture to be decided by the Court. When it became clear the cases were all taking different paths to resolution, the cases were severed on May 5, 2020 (Case No. 15-58440 Doc. No. 1420).

In Sugarloaf, the Trustee sold real property and initially filed a Chapter 11 plan. After the secured lender filed a proof of claim that far exceeded the amount anticipated, the Trustee determined dismissal was in the best interest of all parties. The Trustee objected to and settled the lender's claim, and then moved to dismiss the case on August 5, 2020 (Case No. 15-58442 Doc. No. 147). The Court granted the Motion to Dismiss on August 28, 2020, subject to the final fee applications of Mr. Glass, GR, and his counsel (MMM) being approved (Case No. 15-58442 Doc. No. 164). On November 17, 2020, the Court approved the Final Application for Compensation for Mr. Glass (Doc. No. 200) and the Final Application for Compensation for GR (Doc. No. 202)

(collectively the "Fee Orders"), with the Final Application for Compensation for MMM (Doc. No. 201). The Fee Orders, together with the order on MMM's final compensation, were appealed to the District Court and the Eleventh Circuit Court of Appeals.

On January 8, 2021, while the Sugarloaf Fee Orders were on appeal, motions were filed in the Nilhan Developers and NRCT cases to (1) Remove the Chapter 11 Trustee; (2) Disqualify GR, Accountants for the Trustee; (3) Disgorge Any Fees and Expenses of the Trustee; and (4) Disgorge Any Fees and Expenses of the Accountants for the Trustee (Case No. 15-58443 Doc. No. 238 & Case No. 15-58444 Doc. No. 178). The Court held an evidentiary hearing on the motions on February 22, 2021. On April 19, 2021, the Court issued an order removing Mr. Glass as Plan Agent in both the NRCT and Nilhan Developers cases, removing GR as a professional to the Plan Agent and barring it from being employed by any subsequent plan agent, and disallowing fees otherwise allowable to GR and Mr. Glass through April 26, 2019 (Case No. 15-58444 Doc. No. 230; Case No. 15-584443 Doc. No. 300) (the "Removal Order"). The Court incorporates the Removal Order herein and will discuss it more below.

After the removal of Mr. Glass and GR, and while the Sugarloaf Fee Orders were still on appeal, Chuck, Niloy, and Rohan Thakkar filed a Motion in the Sugarloaf case to (1) Remove the Chapter 11 Trustee; (2) Disqualify GR; (3) Disgorge Any Fees and Expenses of the Trustee; and (4) Disgorge Any Fees and Expenses of the Accountants for the Trustee (Docs. Nos. 245 & 248). Chuck Thakkar also filed a motion pursuant to Bankruptcy Rule 8008(a)(3) requesting an order (i) Removing Chapter 11 Trustee; (ii) Removing GR; (iii) Disgorging Fees and Expenses of Trustee and GR; and (iv) Determining the Involvement or Lack Thereof of MMM (Doc. No. 249) (the "Rule 8008 Motion"). The Court denied the request under Rule 8008 and deferred consideration of any request to require disgorgement of fees, removal of the Trustee or financial

4

advisor to the Trustee, and/or the standing of Chuck Thakkar until the resolution of the appeals of the Fee Orders.

The Eleventh Circuit Court of Appeals ultimately dismissed the appeal of the Sugarloaf Fee Orders on March 4, 2022. On June 27, 2022, Mr. Glass, as Trustee, filed a Notice of Proposed Final Distribution (Doc. No. 294). Mr. Glass proposed to pay GR fees and expenses of $8,343.90 and himself, as Trustee, $92,268.38 based on the prior approved fee applications. In response, Chuck Thakkar and NRCT filed a motion opposing the Trustee's proposed final distribution and requested the Court to modify the orders approving final fees and expenses awarded to Mr. Glass and GR (Docs. Nos. 296 & 297). They contended the bases on which RG and GR were disqualified in the NRCT and Nilhan Developers cases were even more applicable in the Sugarloaf case. They also sought disgorgement from GR of the fees previously paid for the period of December 11, 2018 through April 26, 2019 and requested the Trustee's fees be based on an hourly rate and time billed, rather than on commission, and to be reduced accordingly. Mr. Glass and GR filed a response in opposition (Doc. No. 298). Mr. Thakkar then filed his own motion seeking reconsideration of the Fee Orders. More specifically, Mr. Thakkar seeks to remove Mr. Glass, to disqualify and bar GR from serving as a professional to the Trustee, and to deny and require disgorgement all of Mr. Glass and GR's fees and expenses (Doc. No. 301).

**<u>Reconsideration Standard</u>**

Federal Rule of Civil Procedure 59, made applicable by Bankruptcy Rule 9023, permits bankruptcy courts to alter or amend an order or judgment. Fed. R. Civ. P. 59(e), Fed. R. Bankr. P. 9023. As explained by the Supreme Court, the rule "may not be used to re-litigate old matters or to raise arguments or present evidence that could have been raised prior to the entry of judgment." <u>Exxon Shipping Co. v. Baker</u>, 554 U.S. 471, 486, n.5 (2008) (citing 11 C. Wright & A. Miller,

5

Fed. Prac. & Proc. § 2810.1, pp. 127-128 (2nd ed. 1995)). Accordingly, to prevail on a motion for reconsideration, the movant must present either newly discovered evidence or establish a manifest error of law or fact. In re Kellogg, 197 F.3d 1116, 1119 (11th Cir. 1999).

Another ground for setting aside an order of this Court exists under Fed. R. Bankr. P. 9024 and Fed. R. Civ. P. 60. This rule permits relief from a final judgment, order, or proceeding in certain circumstances. A final fee award is like any other final order in that it remains subject to modification under Rule 60. In re Rockaway Bedding, Inc., 454 B.R. 592, 597 (Bankr. D.N.J. 2011). The decision to alter or amend a judgment is highly discretionary. Am. Home Assurance Co. v. Glenn Estess & Assocs., 763 F.2d 1237, 1238-39 (11th Cir. 1985). Rule 60(b) lists six categories of reasons or grounds on which to base a motion seeking relief from a final judgment, order, or proceeding. The rule provides the Court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). "Rule 60(b) was not intended to provide relief for error on the part of the court or to afford a substitute for appeal." Matter of E.C. Bishop & Son, Inc., 32 B.R. 534, 536 (Bankr. W.D. Mo. 1983) (quoting Title v. U.S., 263 F.2d 28, 31 (9th Cir. 1959)).

**Legal Analysis**

For the reasons stated on the record at the hearings on July 14, 2022 and July 28, 2022 (which the Court reserves the right to supplement) and herein, the Court finds reconsideration of

the Fee Orders is warranted. Before considering the merits of the Motions, though, the Court will consider the arguments of Mr. Glass and GR that the Thakkars lack standing to bring the Motions and that the Motions are not timely.

Standing

Mr. Glass and GR contend the Thakkars do not have standing to bring the Motions. Mr. Thakkar argues that as the guarantor of Sugarloaf's debt, he has standing. Federal Rule of Civil Procedure 60(b) states a court may grant relief from judgment to "a party or its legal representative." In re Remington Park Owners Ass'n, 548 B.R. 108, 115 (Bankr. E.D. Va. 2016). While the term "party" speaks for itself, the term "legal representative" means not only a duly appointed legal representative, but also individuals in a position tantamount to that of a party—i.e., nonparties whose interests are directly affected by the final judgment, that is, one who is in privity with a party. See id.; Kem Mfg. Corp. v. Wilder, 817 F.2d 1517 (11th Cir.1987); see also 12 Moore's Federal Practice - Civil § 60.63 (2022). Status as a "party in interest" under section 1109(b) does not necessarily establish standing to file a motion under Rule 60(b). In re El Paso Refinery, LP, 37 F.3d 230, 233 (5th Cir. 1994). But, some circuits have afforded relief under Rule 60(b) to nonparties in limited circumstances. Remington Park Owners Ass'n, 548 B.R. at 115. Courts have permitted standing under Rule 60(b), for example, where a nonparty's rights or interests were "directly or strongly affected by the judgment" or "sufficiently connected and identified with" the underlying proceeding. Id. at 117; Lawrence v. Wink (in Re Lawrence), 293 F.3d 615, 627 n.11 (2d Cir. 2002).

The Court may also consider relief under Rule 60(b) on its own. Rule 60(b) authorizes a court to grant relief from judgment "[o]n motion and just terms." Appellate courts construing this language have routinely concluded that a trial court may grant such relief *sua sponte*. In re Parr,

7

2019 WL 365748, at *6 (10th Cir. BAP Jan. 30, 2019), aff'd, 778 F. App'x 569 (10th Cir. 2019); see e.g., In re Andrews, 2007 Bankr. LEXIS 3333, at *8 (Bankr. N.D. Ala. Sep. 26, 2007) (court may *sua sponte* set aside a judgment for appropriate reasons);

The Court has not determined whether the Thakkars have standing to bring the Motions. But, even if the Thakkars do not have standing to bring the Motions, the party with clear standing, the Debtor, is under the control of the Trustee who is the target of the Motions. So, the Court finds the circumstances demand reconsideration of the Fee Orders *sua sponte*.

Timing of Motions

Mr. Glass and GR also contend the Motions are not timely because they were filed more than a year after the Fee Orders were entered. The Court finds this argument unavailing because the Court views the Motions as a revival of the motions filed in April 2021, which the Court held in abeyance pending the appeal of the Fee Orders.

A motion under Federal Rule of Bankruptcy Procedure 9023, which incorporates Fed. R. Civ. P. 59 must "be filed . . . no later than 14 days after entry of judgment." Fed. R. Bankr. P. 9023. There is no dispute both the original motions and the current Motions were filed more than 14 days after the Fee Orders were entered and, accordingly, relief under Rule 59 is not proper.

A motion under Rule 60(b), incorporated into Fed. R. Bankr. P. 9024, must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding. Fed. R. Civ. P. 60(c). The Motions seek reconsideration of the Fee Orders under Rule 60(b)(2) on the basis of evidence that was not discovered, or discoverable, before the Fee Orders were entered. Accordingly, the request for relief must have been made no more than a year after the entry of the orders. While the Motions were not filed until June 29, 2022 and July 13, 2022, the Court finds they were nevertheless timely.

Mr. Thakkar previously sought the same relief he now seeks in his Rule 8008 Motion, which he filed on May 3, 2021, which was within a year of the Fee Orders being entered. The Court specifically deferred consideration of any request to require disgorgement of fees and removal of the Trustee and GR until the resolution of the appeals of the Fee Orders (Doc. No. 257). Bankruptcy Rule 9024 specifically references Rule 8008, pursuant to which the Court may defer considering a motion while an appeal is pending. "Rule 8008(a) makes clear that after an appeal has been pursued, a party seeking under Fed. R. 60(b) to pursue relief from a final order of a bankruptcy court must timely file that motion in the bankruptcy court." In re Salas, 2020 WL 6054783, at *9 (Bankr. D.D.C. Oct. 13, 2020), aff'd, 2022 WL 1154596 (D.D.C. Apr. 19, 2022). That is exactly what happened here. The renewed motion under Rule 60(b) was filed within three months of the appeal being dismissed. Accordingly, the Court will consider the relief requested in the Motions.

Reconsideration of Fee Orders

The Court finds reconsideration of the Fee Orders is warranted for the reasons as set forth in the Removal Order. Those reasons are even stronger in this case, though, given the close relationship between NCT and Sugarloaf and given Mr. Ratner and GR were specifically engaged by Gateway to gain control of Sugarloaf.

A review of the findings in the Removal Order is appropriate. During the course of the bankruptcy cases, Gateway claimed multiple interests in the Debtors' cases. First, Gateway claims 100% ownership of NCT Systems, Inc. ("NCT"), an indirect owner with NRCT of Sugarloaf. Gateway acquired its interest in NCT by virtue of its judgment and a court order transferring the stock of NCT to Gateway. Second, Gateway claims an economic interest in NRCT, by way of a judgment against Rohan Thakkar and certain charging orders. Third, Gateway asserts an interest in claims of Nilhan Financial, LLC ("Nilhan Financial"), an entity that was previously controlled

9

by the Thakkars that is also a creditor of all the Debtors. Fourth, Gateway holds a replacement lien on Bay Circle's claim for contribution against NRCT. Fifth, Gateway requested discovery from Sugarloaf and NRCT on July 31, 2018 (Case No. 15-58440 Docs. Nos. 856 & 857) relating to the management, organization, and formation of Sugarloaf and Sugarloaf's sole member, Sugarloaf Centre Partners, LLC, which is owned 50% by NCT and 50% by NRCT. Its interest in this case is pervasive.

The Court found the relationship between Mr. Ratner, GR, and NCT/Gateway was more extensive than previously known and not properly disclosed. More specifically, the Court found NCT was dissolved at some point in 2017. Gateway wanted to reinstate NCT, to ultimately gain control over Sugarloaf, and it sought GR's help. In June 2018, counsel for Gateway (Walt Jones) contacted Mr. Ratner about GR providing services as an officer of NCT. A sample engagement letter was sent by GR to Mr. Jones on June 1, 2018. On July 23, 2018, Mr. Jones emailed Mr. Ratner asking for a proposal from GR "along the lines . . . [of] the example engagement letter you sent me last month." He described the engagement, stating:

> [W]e would want you to serve as non-member manager/CRO for an entity called **Sugarloaf Centre Partners, LLC**. That entity is owned 50/50 by **NCT Systems, Inc.** and **NRCT**. Our client holds 100% of the stock in NCT Systems. NRCT is a debtor in a chapter 11 bankruptcy case before Judge Hagenau. Sugarloaf Centre Partners is the sole member in an entity called **Sugarloaf Centre, LLC**, which is also a chapter 11 debtor in bankruptcy.

Mr. Jones also provided Mr. Ratner with some background information. He wrote:

> The principal of NRCT is an individual named Chuck Thakkar. Our client and Thakkar have been engaged in litigation in Florida for nearly 10 years. Our client holds a $15 million judgment against Thakkar and various entities of his, although not against the Sugarloaf entities. Our client, on account of its 50% membership in Sugarloaf Centre Partners (by way of its 100% interest in NCT Systems), would like to assert control over Sugarloaf Centre Partners and thus assert control over Sugarloaf Centre, LLC, which owns valuable property in Atlanta. The Sugarloaf Centre, LLC property is subject to the lien of a DIP lender that we believe is affiliated with Thakkar.

10

> Until recently, John Christy represented Thakkar, NRCT, and the Sugarloaf entities. Denise Dotson has recently stepped in. Either way, Thakkar is litigious. Florida counsel is providing us with corporate documentation concerning Sugarloaf Centre Partners so that our corporate guys can determine whether NCT Systems has an absolute contractual right to replace Thakkar or his entity as manager of Sugarloaf Centre Partners, LLC. Otherwise, we will be forced to file an adversary proceeding.

Mr. Jones and Mr. Ratner talked about the engagement on July 26, 2018. That same day, Mr. Ratner's colleague, Jason Cristal, sent a template fiduciary engagement letter to Mr. Jones.

By early September, Gateway wanted to move forward with the engagement. One impetus, according to Mr. Jones, was that Sugarloaf had filed a Motion to Dismiss its bankruptcy case on July 25, 2018 (Case No. 15-58442 Doc. No. 100). Gateway wanted to object to the motion. NCT had been administratively dissolved in Florida and needed to be reinstated, in Mr. Jones' opinion, to file such an opposition.

The engagement of GR was finalized through a series of emails and drafts on September 6 and 7, 2018. Five drafts of the engagement letter were exchanged over the course of the two days and, finally, at 4:25 p.m. on September 7, 2018, a copy of the engagement letter executed by Mr. Ratner was sent to Gateway's counsel. The signed Engagement Letter provided:

> This letter confirms and sets forth the terms and conditions of the engagement between GlassRatner Advisory & Capital Group, LLC ("GlassRatner") and the Company [defined as NCT Systems, Inc.], including the scope of the services to be performed and the basis of compensation for those services. Upon execution of this letter by each of the parties below, this letter will constitute an agreement between the Company and GlassRatner. It is anticipated that the Company will file an action to gain control of Sugarloaf Centre Partners, LLC ("Sugarloaf Partners") and Sugarloaf Centre, LLC ("Sugarloaf Centre"), either in state court or in the chapter 11 bankruptcy case of Sugarloaf Centre, which case is pending in the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division, before The Honorable Wendy Hagenau (the "Control Action"). In the Control Action, the Company would seek to have GlassRatner appointed as non-member manager of Sugarloaf Partners and Sugarloaf Centre. Sugarloaf Centre owns and operates commercial, income producing real property in the Atlanta area.

11

The Engagement Letter contemplated Mr. Ratner and Mr. Cristal would work on the matter as well as "other staff as appropriate." The Engagement Letter provided all compensation to be paid by NCT to GR would be advanced by Gateway's counsel, Morgan & Morgan. The Engagement Letter was then signed by Carson Good on behalf of Good Gateway, LLC. Mr. Jones received a fully executed copy of the Engagement Letter on September 10, 2018.

NCT filed a Reinstatement on September 10, 2018 representing that Mr. Ratner was President and Director of NCT. On the same day, Mr. Jones filed the opposition to Sugarloaf's motion to dismiss (Case No. 15-58440 Doc. No. 878). It stated Gateway was the sole shareholder of NCT, a 50% owner of Sugarloaf's sole member and, as such, it had an interest in the proper management of Sugarloaf and opposed dismissal (in light of Mr. Thakkar's involvement in the management and adversarial relationship between Mr. Thakkar and Gateway, Gateway wanted Sugarloaf to remain in bankruptcy).

A couple months later, the U.S. Trustee sought input on the appointment of a trustee. While the U.S. Trustee, Mr. Glass, GR, and Mr. Jones had information about the details of the Engagement Letter, and Mr. Jones, Mr. Glass, and GR knew of the Reinstatement, none of this was filed with the Court or disclosed in any Court hearing.

In early 2019, Mr. Ratner was deposed in an unrelated case in Florida. There, he was asked about NCT's Reinstatement which had named him as President and Director of NCT. Mr. Ratner testified he was surprised. Upon return to Atlanta, he asked Mr. Jones to remove his name as an officer and director. On April 26, 2019, NCT filed a 2019 Annual Report that identified Mr. Townsend as the registered agent and Good Gateway, LLC as NCT's President and Director. While Mr. Ratner reportedly told Mr. Glass about the Reinstatement and cure, Mr. Glass and GR did not amend their declarations and no information about the Reinstatement was provided to the

Court.

The Court held in the Removal Order that Mr. Ratner was an insider of Sugarloaf. Sugarloaf is owned 100% by Sugarloaf Centre Partners, LLC (Case No. 15-58442 Doc. No. 18 p. 5), which in turn is owned 50% by NRCT (one of the Debtors) and 50% by NCT Systems, Inc. ("NCT"). As President and Director of NCT, Mr. Ratner was an insider of NCT. NCT is an affiliate of Sugarloaf since it indirectly owns 50% of Sugarloaf.

Because Mr. Ratner was an insider of Sugarloaf, he was not a disinterested person pursuant to section 101(14) during the time he served as an officer and director of NCT. GR's role in providing a President and Director to NCT made it not disinterested. NCT engaged GR, not just Mr. Ratner, to work on its behalf. Further, NCT specifically engaged Mr. Ratner and GR to "assert control over Sugarloaf." It specifically wanted GR to be appointed as a manager of Sugarloaf to assert control over valuable commercial property Sugarloaf then owned. The Court can hardly conceive of a more direct relation to this Debtor.

Neither GR nor the Trustee adequately disclosed the connections of Mr. Ratner and GR to the Gateway interests. It is unfathomable to the Court that an Engagement Letter specifically identifying these consolidated cases, this judge, this Debtor, and this Debtor's property was not disclosed to the Court, even if GR thought it was unsigned. This is particularly true when the outcome sought in the Engagement Letter (replacing management in Sugarloaf with someone from GR) is exactly what happened when the Court appointed Mr. Glass as the Trustee and GR as his financial advisor. Moreover, GR and the Trustee failed to update their disclosures when they learned of the Reinstatement.

The Court held that the failure to comply with the Bankruptcy Code authorized the Court to require Mr. Glass and GR to disgorge fees in the NRCT and Nilhan Developers cases. The Court

13

concluded, though, that GR and the Trustee did contribute to those cases and did real work on which the Court relied. The Court concluded that the appropriate sanction was to deny fees to the Trustee and GR for the period in which Mr. Ratner served as an officer and director of NCT and/or his name appeared on the Secretary of State records as such. This period is from the inception of the Trustee's and GR's work through April 26, 2019. Fees otherwise allowable to the Trustee and GR for work performed from the date of inception through April 26, 2019 were disallowed. Compensation for Mr. Glass as Trustee is governed by section 330(a)(3) and is capped at the maximum commission provided in section 326. 11 U.S.C. §§ 326 & 330(a)(3). The Court concluded in the Removal Order that the fair value of Mr. Glass's services as Trustee should be based on his hourly billing rate and his requested fees were reduced.

<u>Collateral Estoppel</u>

Mr. Glass and GR oppose reconsideration of the Fee Orders and contend the Motions do not introduce new evidence and merely put forth unsupported and conclusory allegations about their connections to NCT. The Court finds that collateral estoppel applies and bars relitigation of the issue. Res judicata and collateral estoppel are related doctrines that prevent the relitigation of an issue already litigated and determined by a valid and final judgment in another proceeding. <u>United States v. Irvin</u>, 787 F.2d 1506, 1515 (11th Cir. 1986). Their purposes are to protect "litigants from the burden of relitigating an identical issue with the same party or his privy and [to promote] judicial economy by preventing needless litigation." <u>Parklane Hosiery Co. v. Shore</u>, 439 U.S. 322, 326 (1979). Though the doctrines are related, they are distinct concepts. <u>Precision Air Parts, Inc. v. Avco Corp.</u>, 736 F.2d 1499, 1501 (11th Cir. 1984).

Res judicata, or claim preclusion, "bars a second suit involving the same parties and the same causes of action on all matters that were part of the first suit and all issues that could have

14

been litigated." Id. (citing Johnson v. United States, 576 F.2d 606, 611 (5th Cir. 1978)). Collateral estoppel, or issue preclusion, "precludes relitigation only of issues that were actually litigated in the initial suit, whether or not the second suit is based on the same cause of action." AVCO Corp., 736 F.2d at 1501; Johnson, 576 F.2d at 611 . Thus "[w]hereas *res judicata* forecloses all that which might have been litigated previously, collateral estoppel treats as final only those questions actually and necessarily decided in a prior suit." Brown v. Felsen, 442 U.S. 127, 139 n.10 (1979).

To determine if collateral estoppel applies, the bankruptcy court applies the law of the court issuing the prior judgment. In re St. Laurent, 991 F.2d 672 , 675-76 (11th Cir. 1993); In re Brownlee, 83 B.R. 836, 838 (Bankr. N.D. Ga. 1988); see also Restatement (Second) of Judgments § 87 (1982). The prior orders—were both issued by this Court, a federal court, and therefore, federal law will determine whether collateral estoppel bars relitigation.

Under federal law, collateral estoppel applies when the following elements are met:

1) the issue in the prior action and the issue in the present action are identical;
2) the issue was actually litigated in the prior action;
3) the determination of the issue in the prior action was a critical and necessary part of the judgment in the litigation; and
4) the burden of persuasion in the later proceeding is not significantly heavier than the burden of persuasion in the initial action.

Bush v. Balfour (In re Bush), 62 F.3d 1319, 1322 (11th Cir. 1995).

Here, the issues are identical. The Motions raise the same issues of Mr. Glass's and GR's disinterestedness and disclosure that were previously at issue. The question was actually and finally litigated when the Court reviewed the issue in the NRCT and Nilhan Developers cases, and the parties had a full and fair opportunity to litigate the issue. In general, "when a question of fact is . . . submitted to the trier of fact for its determination, and is determined, that question of fact has been actually litigated." In re Williams, 282 B.R. 267, 272 (Bankr. N.D. Ga. 2002) (internal quotation marks and citation omitted). The issues were a critical and necessary part of the Court's

15

decision to remove Mr. Glass and GR and reduce their fees in the Nilhan Developers and NRCT cases as they were an important element of the Court's determination and not a peripheral issue. Finally, the burden of persuasion in this case is not significantly heavier than the burden of persuasion in the initial action—it is the same. Accordingly, the Court finds collateral estoppel applies and bars relitigation of Mr. Glass's and GR's connections to NCT and their lack of disinterestedness and disclosure.

Moreover, the issues and connections between the Trustee, GR, and Gateway raised new facts. The motions to disqualify Mr. Glass and GR in the Nilhan Developers and NRCT cases were filed after the entry of the Fee Orders. The Removal Order was entered five months after the Fee Orders and reflects the Court's view that the evidence continued to evolve throughout the trial. Thus, the Court concludes grounds exist under Rule 60(b)(2) to reconsider the Fee Orders.

### Conclusion

Reconsideration of the Fee Orders is warranted based on the evidence that was discovered after the Fee Orders were entered. Neither GR nor the Trustee adequately disclosed the connections of Mr. Ratner and GR to the Gateway interests, and neither were disinterested parties for all the reasons set forth in the Removal Order. Their failure to comply with the Bankruptcy Code authorizes the Court to require Mr. Glass and GR to disgorge fees. The Court concludes the sanction for this failure should be the same as in the Nilhan Developers and NRCT cases—disallowance and disgorgement of all fees incurred from the inception of the representation to April 26, 2019. For the same reasons set out in the Removal Order, the Court declines to require all fees disgorged. The Court recognizes that the Trustee and GR provided service to the estate through the sale of property, the filing of a plan, and settlement of the lender's claims, among other services.

Mr. Glass's billing records show he billed $26,887.50 for Sugarloaf work after April 26, 2019. After reviewing the billing statements, the Court determines that $2,625 of that amount was for work done in the other related cases and improperly charged to Sugarloaf. Applying the factors identified in the Bankruptcy Code and in Johnson v. Ga. Hwy. Express, Inc., 388 F.2d 714 (5th Cir. 1974), the Court determines the fair value of Mr. Glass' services as Trustee in the Sugarloaf case is $24,262.50. This award takes into account all time billed by Mr. Glass at his hourly rate of $625 and is reduced by time entries properly charged to other Debtors. This amount is less than the commission that could be charged in this case. Mr. Glass has not been previously paid in this case. Mr. Glass is awarded $24,262.50.

GR was previously paid $108,585.32, $59,411.99 of which was for work performed from the date of inception through April 26, 2019 and is now disallowed. $8,343.90 in fees incurred after April 26, 2019 were previously approved but not paid. Accordingly, GR must disgorge the difference, which is $51,068.09. Expenses previously approved remain approved.

Accordingly,

**IT IS ORDERED** that the Motions are **GRANTED IN PART and DENIED IN PART** as set forth herein.

**IT IS FURTHER ORDERED** that the Order on the Final Application For Compensation Of Glass Ratner Advisory & Capital Group, LLC (Doc. No. 202) is amended. Fees otherwise allowable to GR for work performed from the date of inception through April 26, 2019 in the amount of $59,411.99 are disallowed. Glass Ratner seeks $8,343.90 in fees incurred after April 26, 2019 that were previously approved but not paid. Accordingly, Glass Ratner is ordered to disgorge **$51,068.09** in fees previously paid. Expenses previously approved remain approved.

**IT IS FURTHER ORDRERED** that the Order on the Final Application For

17

Compensation for Ronald L. Glass, Chapter 11 Trustee (Doc. No. 200) is amended to allow compensation to Mr. Glass of **$24,262.50**.

**IT IS FURTHER ORDERED** that GR is removed as professional to the Trustee.

**IT IS FURTHER ORDERED** that Mr. Glass is eligible to be removed as Trustee, but because the only action left in the case is to make distributions to himself ($24,262.50), the United States Trustee fees ($3,317.24), and Georgia Power Co. ($465.62), with the remainder to go to Westmoore, and the parties have agreed he may remain as Trustee to remit funds to the Registry of the Court for distribution, the Court will not remove him as Trustee at this time.

**IT IS FURTHER ORDERED** that any additional relief requested in the Motions is **DENIED**.

**END OF DOCUMENT**

**Distribution List**

Frank W. DeBorde
Lisa Wolgast
Morris, Manning & Martin, LLP
3343 Peachtree Rd NE, Ste 1600
Atlanta, GA 30326

Paul Alexander
Miller & Martin PLLC
1180 W Peachtree St NW, Ste 2100
Atlanta, GA 30309-3407

David Weidenbaum
Office of the U.S. Trustee
75 Ted Turner Dr SW, Rm 362
Atlanta, GA 30303

Chittranjan Thakkar
3985 Steve Reynolds Blvd
Suite L-101
Norcross, GA 30093

Ronald L. Glass
Glass Ratner Advisory & Capital Group
3445 Peachtree Rd NE, Ste 1225
Atlanta, GA 30326

M. Denise Dotson
M. Denise Dotson, LLC
PO Box 767
Avondale Estates, GA 30002

Walter E. Jones
Balch & Bingham LLP
30 Ivan Allen, Jr. Blvd., N.W.
Suite 700
Atlanta, Georgia 30308

Brian J. Levy
Valerie K. Richmond
Burr & Forman LLP
171 17th Street, Suite 1100
Atlanta, Georgie 30363